UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jacques Buchanan,

    Plaintiff

vs.

Sergeant Walter Reeve, et al.,

    Defendants.

Case No. 1:03-CV-751

**REPORT AND RECOMMENDATION**
(Beckwith, J.; Hogan, M.J.)

    Plaintiff, Jacques Buchanan, proceeding pro se, brings this action against defendants, Middletown police officers Sergeant Walter Reeve, Sergeant Jim Cunningham, Officer Brian Taylor, and Officer Mehan, individually and in their official capacities under 42 U.S.C. §1983. Plaintiff claims that, under color of law, the defendants violated his civil rights under both state and federal law, that he was unlawfully deprived of his personal property and his freedom, that his right to due process was violated when his property was taken and that he was subject to false arrest and malicious prosecution, leading to the revocation of his bond and incarceration in an unrelated criminal matter. This matter is before the Court on defendants' motion for summary judgment (Doc. 18), plaintiff's memorandum in opposition (Doc. 19), and on defendants' reply memorandum (Doc. 20).

    A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

    In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

I.  **FACTS**

Defendants Walter Reeve and Jim Cunningham are police sergeants with the Middletown Ohio Police Department. Defendants Taylor and Mehan are police officers with the Middletown Ohio Police Department. Plaintiff, Jacques Buchanan, describes himself as a professional recording artist and producer. (Doc. 2 ¶ 8). On June 19, 2002, plaintiff was arrested at a residence located at 3916 Roosevelt Blvd., Apt. 11, Middletown, Ohio.[1] On that date, Buchanan claims that he and a friend, Richard Marshall, went to the residence on Roosevelt Blvd. to visit Mary Murphy with whom he was to have dinner. (Doc. 2 ¶¶ 9, 11-13). Mary Murphy was not at home when they arrived at the apartment. (Doc. 2 ¶ 13). Plaintiff and his friend went into the residence through an open back patio door. (Doc. 2 ¶ 14). Plaintiff claims that four other of his friends came to the residence during that evening. However, all but Kevin Cunningham left by about 2:00 a.m. (Doc. 2 ¶¶ 17-19). About that time, plaintiff and Kevin heard a knock at the door. (Doc. 2 ¶19). Plaintiff and Kevin each looked through the door's peep hole and saw a pizza delivery man outside the door. (Doc. 2 ¶¶ 20-21). Kevin opened the door. (Doc. 2 ¶ 21). The pizza man asked if anyone had ordered pizza, identified himself as a Middletown Police officer and then ordered the two men to get on the floor. (Doc. 2 ¶ 22). The two men lay down on the floor where they were handcuffed and searched. (Doc. 2 ¶ 23). Plaintiff claims that the only items on his person were a cell phone and hand written lyrics for a song. (Doc. 2 ¶24).

Middletown police officers arrived at the residence with a search warrant issued that same day, June 19, 2002. (Doc. 18, Exh. C). The warrant had been requested by Sergeant Jim Cunningham who is assigned as a Detective to the Special Operations Unit

---

[1] Plaintiff's complaint incorrectly states the date of the arrest as June 19, 2003. (Doc. 2 ¶ 7). However, it is clear from the context of the complaint and motion, that the arrest actually occurred in 2002.

2

and has been employed by the Middletown Police Department since 1989. (Doc. 18, Exh. B at 2). He has training and experience in drug activity and the enforcement of drug laws. *Id.*

Officer Cunningham's affidavit in support of the search warrant states that on or about May 12, 2002 he had received information from Jacques Buchanan that Judah Ben Watson was storing powder cocaine at apartment #11 on 3916 Roosevelt Blvd. *Id.* In the twenty-four hours prior to his warrant request, Cunningham received information from a confidential and reliable informant that Mary Murphy, who lived at that residence, was allowing Buchanan and Watson to stay with her and to store powder cocaine as well as sell cocaine. *Id.* Both the informant and Mary Murphy told the officer that Mary had been "shooting up" Oxycontin pills with hypodermic needles. *Id.* Sergeants Cunningham and Reeve had conducted surveillance of the residence and observed several people coming and going from apartment #11. *Id.* When Mary Murphy left the apartment, Cunningham had uniformed officers stop her on a bench warrant issued by Middletown Municipal Court. *Id.* A search of Murphy resulted in the discovery of a hypodermic needle in her purse and another in the trunk of the car she had been driving. *Id.* Murphy confirmed that the needles were hers and that she used them to inject Oxycontin. *Id.* She told officers that Jacques Buchanan was staying at the apartment and about his pending felony drug cases. *Id.* She also admitted to having snorted powder cocaine recently with Ben Watson. *Id.*

The search warrant was granted based upon Officer Cunningham's affidavit. *Id.* The search warrant, executable anytime day or night, authorized a search of the Roosevelt Blvd. apartment and included authorization to search "all persons present." (Doc. 18, Exh. C). The officers gave a copy of the warrant to Jacques Buchanan. *Id.*

The police searched the bedroom, front room and kitchen using police dogs. (Doc. 2 ¶ 33, 35). Plaintiff and Kevin were found in the dining room/kitchen area. (Doc. 18 Exh. D). Officers found about 6.8 grams of fake powder cocaine in the kitchen cabinet near where plaintiff was standing. *Id.* Buchanan and Kevin were at some point taken to the back bedroom where Buchanan claims to have seen lyrics of his that he had left there. (Doc. 2 ¶¶ 35-36). Plaintiff claims that Officer Meham took the lyrics from him and then gave them to Sergeant Cunningham. (Doc. 2 ¶ 37)

The search of the apartment resulted in the finding of items related to drugs including approximately 6.8 grams of fake cocaine in a kitchen cabinet, three spoons with a pill and residue also in the kitchen cabinet, a hypodermic needle in the bedroom, baggies, a razor blade, digital scales, and rolling papers. (Doc. 18 Exh. D). The receipt for property received was signed by both Mary Murphy and Jacques Buchanan. *Id.*

Plaintiff Buchanan was arrested on suspicion of possession of an illegal controlled substance. However, Kevin was released. (Doc. 18, Exh. D). Plaintiff was questioned at police headquarters and was asked to make a "buy" and for information as to "what was

3

going on in the streets." (Doc. 2 ¶ 40, Doc. 9 ¶ 40). At some point, the officers discussed the song lyrics with the Plaintiff in some way. (Doc. 2 ¶ 44, Doc. 9 ¶ 44).

Buchanan was charged with possession of a counterfeit controlled substance. (Doc. 2 ¶ 45, Doc. 9 ¶ 45). In his Sworn Statement of Facts, Officer Cunningham stated that Buchanan admitted awareness that the substance seized was not powder cocaine but was baking soda. (Doc. 18 Exh. D). The substance seized did not test positive for cocaine. *Id*.

At the time of his arrest, plaintiff was on pre-trial release on an indictment for felony possession of cocaine. (Doc. 18 Exh. A & D). The arrest resulted in a violation of plaintiff's pre-trial release conditions and subsequently, a motion was filed for revocation of the bond as well as for his arrest. (Doc. 18 Exh. E). On June 24, 2002, the motion was granted by Judge Crehan of the Butler County Court of Common Pleas. *Id.* Plaintiff claims that bond was revoked for failure to pay child support. (Doc. 19). Plaintiff is currently incarcerated at the Chillicothe Correctional Institute on a conviction of failure to pay child support. (Doc. 2 ¶ 46, Doc. 18 at 3).

On September 30, 2002 the charges against the plaintiff were withdrawn reserving the right to refile. (Doc. 18 Exh. F). The defendants state that the withdrawal of the charges were the result of a plea bargain. (Doc. 18 at 3).

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S §1983 CLAIMS FOR FALSE ARREST AND FALSE IMPRISONMENT SHOULD BE GRANTED.

Plaintiff claims that his arrest and detainment were made without probable cause in violation of his Constitutional rights and that, as a consequence of the alleged unlawful arrest, his bond was revoked resulting in his current incarceration for failure to pay child support.

As an initial matter, plaintiff claims that summary judgment should be denied because he has yet to complete discovery. (Doc. 19, "Affidavit"). A Rule 56(f), Fed. R. Civ. P., affidavit is the proper method of requesting additional time to respond to a motion for summary judgment. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). A party seeking an extension of time must show the need for discovery, the material facts to be discovered, and the reasons for not previously discovering the information. *Id.*

Although plaintiff labels his document as an "affidavit," it is not taken before a person having authority to witness the affirmation, such as a notary public. An affidavit is required to be sworn to by the affiant in front of an officer authorized to administer oaths. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002). Nor does the document amount to an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746. Plaintiff's unsworn statements do not suffice as evidence to support his claims. *See Prince v. Nichols*, 188 F.3d 508 (6th Cir. 1999)(unpublished), 1999 W.L.

4

701905, **2. Additionally, plaintiff's document does not inform the Court of what material facts he hoped to obtain through further discovery and how such discovery would alter the outcome of this action. See *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). In the absence of a valid Rule 56(f) affidavit, there is no basis by which to conclude that a motion for summary judgment would be premature until the close of discovery. See *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003).

In response to plaintiff's claims of false arrest and false imprisonment, the defendants have raised a defense of qualified immunity. Government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Black v. Parke*, 4 F.3d 442, 444 (6th Cir. 1993), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a three pronged analysis. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc). First, the Court must determine whether the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. *Id*. See *Saucier*, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Second, the Court determines whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Id.; Feathers*, 319 F.3d at 848; *Williams*, 186 F.3d at 691. Third, the Court must examine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers*, 319 F.3d at 848; *Williams*, 186 F.3d at 691.

A constitutional right is "clearly established," thereby precluding the application of qualified immunity, if "the law [is] clear in regard to the official's particular actions in the particular situation." *Black*, 4 F.3d at 445, quoting *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir.), *cert. denied*, 112 S.Ct. 187 (1991). See also *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.), *cert. denied*, 116 S.Ct. 524 (1995). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." *Saucier*, 533 U.S. at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Id*.

5

Following the three-step procedure for determining qualified immunity, the Court must first address whether, viewing the facts in the light most favorable to plaintiff, there was probable cause to arrest plaintiff on suspicion of possession of an illegal controlled substance. An arrest without probable cause violates the Fourth Amendment to the United States Constitution. *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003); *Centanni v. Eight Unknown Officer*, 15 F.3d 587, 589 (6th Cir.), *cert. denied*, 512 U.S. 1236 (1994). Probable cause to arrest exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *see Thacker*, 328 F.3d at 255. The Sixth Circuit has set forth the general guiding principles governing the determination of probable cause for an arrest:

> [T]he Fourth Amendment does not require that a police officer know a crime has occurred at the time the officer arrests or searches a suspect. *See United States v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989). The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty. The Supreme Court has made clear that there is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur. *See Illinois v. Gates*, 462 U.S. 213, 231 (1983). There is, of course, a requirement that the officers be able to articulate concrete facts from which they infer a probability that illegality has occurred. As we have consistently emphasized, however, while officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt. *See, e.g., United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

*U.S. v. Strickland*, 144 F.3d 412, 415-16 (6th Cir. 1998). "Whether there exists a probability of criminal activity is assessed under a reasonableness standard based on an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest.*" *Thacker*, 328 F.3d at 255, internal citations and quotations omitted (emphasis in the original).

The undisputed facts in this case show there was probable cause to arrest the plaintiff. At the time of Buchanan's arrest, the defendant officers were executing a valid search warrant. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. *See Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). Generally, investigators and police officers are entitled "to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause that official belief in the

6

existence of probable cause is unreasonable." *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989), citing *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986). Here the warrant was based upon Detective Cunningham's affidavit and allowed the officers executing the warrant to search "all persons present" as well as to look for drug related evidence. (Doc. 18, Exh. B). The affidavit stated information from a confidential and reliable informant, obtained within the previous 24 hours, that Mary Murphy was living at the apartment and allowing Buchanan to store and sell cocaine while staying there. *Id*. The affidavit also stated that Mary Murphy had been arrested after leaving the apartment and was found to have drug paraphernalia in her possession. *Id*. Additionally, the affidavit stated that Murphy herself had said during questioning that Buchanan was staying at the apartment. *Id*. This evidence, along with that additionally stated in the document, is sufficient to establish probable cause for the issuance of the search warrant on which the defendant officer's were acting at the time of Buchanan's arrest.

During the search of the apartment the defendant officers discovered drug related items and fake powder cocaine. (Doc. 18, Exh. D). In Ohio, "No person shall knowingly possess any counterfeit controlled substance." Ohio Rev. Code § 2925.37(A). Possession may be actual or constructive. *State v. Thomas*, 107 Ohio App. 239, 244, 668 N.E.2d 542, 546 (1995). "To establish constructive possession, the state must prove that the defendant was able to exercise dominion or control over the object, even though that object may not be within his immediate physical possession. *Id*. Further, it must also be shown that the person was 'conscious of the presence of the object.'" *Id*. However, presence in a residence where illegal drugs are discovered is alone not enough to establish constructive possession. *City of Cincinnati v. Stirsman*, 322 N.E.2d 282, 283 (Ohio App. 1974). "There must be evidence tending to prove that a defendant was both aware of the presence of illegal drugs and had the power to control them." *Id*.

Plaintiff's presence in the apartment at the time of a late night search corroborates statements by the confidential informant and by Mary Murphy that Buchanan was staying in the apartment. The discovery of drug related items in the apartment also corroborates the information regarding drug activity underlying the search warrant. More specifically, the fake powder cocaine was found in a kitchen cabinet near where Buchanan was physically standing. (Doc. 18, Exh. D). Buchanan admitted that the substance found was actually baking soda not cocaine. *Id*. Subsequent testing of the substance confirmed that it was not cocaine. *Id*. Buchanan's knowledge of the content of the substance found in the kitchen cabinets shows that he was aware of its presence in the apartment. Buchanan's physical proximity to the substance when it was found, especially when coupled with the likelihood that he was living in the apartment, show that he had the ability to exercise dominion and control over it.

Therefore, it was reasonable for the officers to conclude that Buchanan had constructive possession of the counterfeit cocaine found during the search of the apartment. Under all the facts and circumstances within the defendant officers' knowledge at the time of Buchanan's arrest, the Court finds there was probable cause to suspect that Buchanan had committed an offense. *Thacker*, 328 F.3d at 255. Since

plaintiff has failed to show that a constitutional violation has occurred under the first step of the qualified immunity analysis, the Court need not address the second and third elements of the qualified immunity defense. *Saucier*, 533 U.S. at 201. Accordingly, the defendants are entitled to qualified immunity in this matter.

Additionally, plaintiff claims that his arrest led to his bond being revoked and that he is now being wrongly incarcerated as a result. This claim fails as a matter of law because plaintiff's claim of wrongful incarceration implicates the validity of the finding that he violated the conditions of his release on another charge. *See U.S. v. Dallas*, 143 F.Supp.2d 312, 321 (S.D.N.Y. 2001). "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a write of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994). Under *Heck*, plaintiff's claim of damages for the bond violation and claimed subsequent incarceration would not be allowed because the decision to revoke his bond was not overturned, vacated or otherwise invalidated. *Dallas*, 143 F. Supp. at 321-22. Accordingly, defendants' motion for summary judgment should be granted on this claim.

Therefore, for the reasons stated above, the defendants' request for summary judgment on plaintiff's claims of false arrest and false imprisonment should be granted.

## III.    MALICIOUS PROSECUTION CLAIM

While the Sixth Circuit "has yet to resolve the elements of a federal malicious prosecution claim, it is clear that a plaintiff must show, at minimum, 'that there was no probable cause to justify [his] arrest and prosecution.'" *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003), quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001). As discussed above, defendants had probable cause to arrest plaintiff. Therefore, plaintiff cannot make the minimum showing of lack of probable cause for arrest to support a claim of malicious prosecution.

In addition, as a matter of Ohio law, plaintiff's malicious prosecution claim fails because he has not demonstrated the termination of the prosecution in his favor. To establish a claim for malicious prosecution in Ohio, plaintiff must show "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the [criminal] defendant." *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 144, 559 N.E. 2d 732, 735 (1990). "A proceeding is terminated in favor of the accused only when its final disposition indicates that the accused is innocent." *Ash v. Ash*, 72 Ohio St.3d 520, 522, 651 N.E.2d 945, 947 (1995). "[U]nder Ohio law, a plaintiff in a malicious prosecution action must demonstrate that he was absolved of any

8

wrongdoing." *Palshook v. Jarret*, 32 Fed.Appx. 732, 736 (6th Cir. 2002)(unpublished) 2002 W.L. 504966, **4. "[A] plaintiff must demonstrate that the charges were actually adjudicated *on the merits* in his favor." *Id.* (*Emphasis in original*) "[U]nconditional, unilateral dismissal of criminal charges or an abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused." *Ash,* 72 Ohio St.3d at 522, 651 N.E.2d at 948. However, the Court has held that where the criminal charges could be refiled there was no unconditional dismissal of the charges. *Broadnax v. Green Credit Svc.*, 118 Ohio App.3d 881, 889, 694 N.E.2d 167, 172 (Ohio App. 2 Dist. 1997).

According to the defendants, the State withdrew the possession of a counterfeit controlled substance charge against plaintiff in a plea bargain. (Doc. 20 at 2). Although the Judgement Entry and Sentence of the Court does not state that there was a plea bargain, it does plainly show that the State withdrew the charges reserving the right to refile them. (Doc. 18 Exh. F). Because the charges may be refiled this Order is not a final disposition which would indicate the innocence of the accused. Therefore, the plaintiff's complaint fails to allege a termination of the state criminal prosecution in favor of plaintiff.

Hence, plaintiff cannot maintain an action under § 1983 or Ohio law for malicious prosecution because he cannot show that the officers did not have probable cause to arrest him and because he cannot show that the proceedings against him on the charges for which he was arrested were terminated in his favor. Therefore, defendants' motion for summary judgement on plaintiff's claim of malicious prosecution should be granted.

## VI. PLAINTIFF'S CLAIMS REGARDING HIS RACE AND MUSIC PREFERENCES SHOULD BE DISMISSED.

Plaintiff has claimed that the actions toward him by the defendants were motivated by his race and by his choice of music. (Doc. 2, ¶ 50, 53). In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Plaintiff does not offer any factual basis to support his claims that the defendants were motivated by his race and that they did not like his choice of music. Plaintiff's conclusions about the defendants' motivations for his arrest do not state a cause of action for which he is entitled to relief.

## V. PLAINTIFF'S CLAIM OF VIOLATIONS OF PROCEDURAL DUE PROCESS SHOULD BE DISMISSED.

Plaintiff claims that the defendants intentionally acted to deprive him of personal property, particularly, his music lyrics without due process of law. (Doc. 2, ¶ 48).

9

Plaintiff's allegations are insufficient to state an actionable §1983 claim to the extent he seeks to claim he was deprived of his property without due process of law. In order to assert such a claim, he must first "plead...that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983), *cert denied*, 469 U.S. 834 (1984). *See also Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds, Daniel v. Williams*, 474 U.S. 517 (1984). Plaintiff has not alleged any facts even remotely indicating that his remedies under Ohio law to redress the wrong complained of are inadequate. Therefore, he has failed to state a due process claim that is actionable in this §1983 proceeding. Therefore, the Court *sua sponte* dismisses this particular claim pursuant to 28 U.S.C. §1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

## VI.    PLAINTIFF'S STATE LAW CLAIMS FOR FALSE ARREST AND FALSE IMPRISONMENT SHOULD BE DISMISSED.

To the extent plaintiff claims the actions of defendants violate the state law of Ohio, the Court declines to exercise pendant jurisdiction over such claims because plaintiff fails to state a viable federal law claim. *See United Mine Worker v. Gibbs*, 383 U.S. 715 (1966). Thus, plaintiff's state law claims of false arrest and false imprisonment are dismissed without prejudice for lack of jurisdiction.

### IT IS THEREFORE RECOMMENDED THAT:

1.  Defendants' motion for summary judgment be granted on plaintiff's §1983 claims.

2.  Defendants' motion for summary judgment be granted on plaintiff's state law claim of malicious prosecution.

3.  Plaintiff's procedural due process claim be dismissed *sua sponte* by the Court.

4.  The Court certify that pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of this Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 4/8/05

Timothy S. Hogan
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jacques Buchanan,

    Plaintiff

vs

Sergeant Walter Reeve, et al.,

    Defendants.

Case No. 1:03-CV-751

(Beckwith, J.; Hogan, M.J.)

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FIFTEEN (15) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. See *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X | ☐ Agent<br>☐ Addressee |
| | B. Received by (Printed Name) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Jacques Buchanan<br># A437-637<br>PO Box 5500<br>Chillicothe, OH 45601-0990 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☒ Certified Mail   ☐ Express Mail<br>☐ Registered      ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D. | |
| | 4. Restricted Delivery? (Extra Fee)   ☐ Yes | |
| 2. Article Number (Transfer from service label) | 7002 0860 0000 1410 1664 | |

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

1:03cv751 doc.# 27